IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT J. SULLIVAN,

                              OPINION AND ORDER

              Plaintiff,

                                14-cv-659-bbc

    v.

SPEE-DEE DELIVERY SERVICE, INC.,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Robert J. Sullivan worked as a route driver for defendant Spee-Dee Delivery Service, Inc. in Dodgeville, Wisconsin from 2005 to 2011. Plaintiff contends that defendant violated the Americans with Disabilities Act when it reassigned him to a package handler position after concluding that federal law prohibited individuals like plaintiff with epilepsy from driving trucks weighing more than 10,000 pounds.

      Defendant has filed a motion for summary judgment, dkt. #12, which is ready for review. The primary question raised by defendant's motion is whether driving a truck weighing more than 10,000 pounds was an "essential function" of plaintiff's job under the ADA in light of the fact that plaintiff drove a smaller truck 95 percent of the time. If not, then the ADA prohibited defendant from removing plaintiff from that job. Because a reasonable jury could find that driving a truck weighing more than 10,000 pounds was not an essential function of plaintiff's job, I am denying defendant's motion for summary

1

judgment.

OPINION

A.  Essential Function

The Americans with Disabilities Act prohibits an employer from discriminating against a "qualified individual with a disability." 42 U.S.C. § 12112(a). In this case, there is no dispute that plaintiff's epilepsy is a disability under the ADA and that defendant reassigned plaintiff to a position with a lower rate of pay, fewer hours and no benefits because of his epilepsy. The question in this case is whether plaintiff was "qualified" to continue performing his job as a route driver. A person is "qualified" under the ADA if he can perform the "essential functions" of the job at issue, with or without a "reasonable accommodation." 42 U.S.C. § 12111(8).

The parties do not dispute that plaintiff was *capable* of performing all the duties of a route driver. After all, he held the job for six years and defendant does not identify any problems with his work. Further, his epilepsy has been well-controlled by medication; he has not suffered a seizure since 1992. Plt.'s PFOF ¶¶ 12-13, dkt. #31. The problem was that plaintiff was legally prohibited from performing all his duties. The parties agree that federal regulations prohibit an employee from operating a "commercial motor vehicle" (a vehicle that weighs more than 10,000 lbs) if the employee has epilepsy, even in situations like plaintiff's, in which the employee's condition is well controlled by medication and has been for many years. Dft.'s Br., dkt. #13, at 7 (citing 49 C.F.R. § 391.41(b)(8) and 42 Fed. Reg.

2

60078 (Nov. 23, 1977)). Part of plaintiff's job responsibilities required him to drive what the parties call a "step van," which is a commercial motor vehicle because it weighs more than 10,000 pounds. Dft.'s PFOF ¶ 47, dkt. #32. Apparently, defendant overlooked this potential problem when it hired plaintiff and for several years thereafter. However, when defendant finally realized the conflict in 2011, it placed plaintiff on unpaid leave for three days and then reassigned him to a part time position as a package handler, which provided no benefits and paid $5.25 less an hour than the route driver position. Plt.'s PFOF ¶¶ 94 and 97, dkt. #31. (Defendant says that it also offered plaintiff a full time position as a package handler in Stevens Point, Wisconsin, but plaintiff denies that. Plt.'s Resp. to Dft.'s PFOF ¶ 122, dkt. #32.)

Plaintiff does not suggest that defendant should have violated federal law by continuing to let him drive a step van. Instead, he says that driving a step van is not an essential function of his job and that defendant should have accommodated him by allowing him to drive what the parties call a "G-van" exclusively. Those vans weigh less than 10,000 pounds, so federal law does not prohibit plaintiff from driving them. Dft.'s PFOF ¶ 46, dkt. #32. Defendant does not argue that plaintiff's disability precluded him from driving a G-van for any other reason either. For example, defendant does not argue that it has a policy of prohibiting anyone with a history of epilepsy from driving any of its trucks.

Defendant's Dodgeville branch uses nine G-vans and five step vans. Plt.'s PFOF ¶ 39, dkt. #31. Each morning defendant decides which van each driver will use for the day, Dft.'s PFOF ¶ 48, dkt. #32, taking into consideration things such as the number and size of

3

packages to be delivered and the number of pick ups. Id. at ¶ 49. However, only three of the twelve established routes at the Dodgeville branch always or almost always require a step van. Plt.'s PFOF ¶ 40, dkt. #31. Generally, drivers drive a similar route each day for the purpose of efficiency. Dft.'s PFOF ¶ 21, dkt. #32.

In support of an argument that it would be reasonable to allow him to drive G-vans exclusively, plaintiff points to the undisputed fact that 95 percent of the time that he was a route driver for defendant, he drove a G-van rather than a step van. Plt.'s PFOF ¶ 32, dkt. #31. (The 95 percent figure translates to 46 times while plaintiff was a route driver. Dft.'s PFOF ¶ 95, dkt. #32.) Plaintiff says that it would be reasonable to assign the other five percent to other employees for the following reasons:

- there were 11 or 12 other route drivers working at the Dodgeville branch, Plt.'s PFOF ¶ 48, dkt. #31;

- in addition to the route drivers, the group leader and the branch manager drove routes to "assist with delivering extra volume" or to fill in for drivers who were sick or on vacation, sometimes on three or four routes a day, Plt.'s PFOF ¶¶ 66-69, dkt. #31;

- occasionally, route drivers picked up or delivered packages outside their regular routes, Plt.'s PFOF ¶ 58, dkt. #31, particularly when the drivers had adjoining routes, Dft.'s PFOF ¶ 63, dkt. #32;

- on a regular basis, the branch manager and drivers adjusted routes to even out the numbers of stops for each driver or to otherwise maximize efficiency, Plt.'s

PFOF ¶¶ 73-75, dkt. #31;

- occasionally, a driver in a step van agreed to deliver a large package for a driver in a G-van if the delivery was not out of the way, Plt.'s PFOF ¶ 59, dkt. #31; Wehrle Dep., dkt. #22, at 39-40;

- rarely, drivers were sent to help other branches, Plt.'s PFOF ¶ 70, dkt. #31; Wehrle Dep., dkt. #22, at 11;

- while a driver was training, more experienced drivers covered part of the new driver's route, Plt.'s PFOF ¶¶ 77-78, dkt. #31;

- on one occasion in the past, defendant temporarily permitted a driver with a foot and knee injury to drive G-vans exclusively, Plt.'s PFOF ¶¶ 114-15, dkt. #31.

The gist of plaintiff's argument is that defendant's own past practices show that it is capable of making small adjustments to its routes when it needs to do so.

Kauffman v. Petersen Health Care VII, LLC, 769 F.3d 958 (7th Cir. 2014), is probably the case in this circuit that is most helpful to plaintiff. Kauffman was a hairdresser at a nursing home. Hairdressers at the home were required to transport residents in their wheelchairs to and from the beauty shop at the home, but plaintiff suffered from health conditions that prevented her from doing that. The employer argued that transporting residents was an essential function of the job and that it could not accommodate Kauffman because "[i]t would put a hardship on the facility to hire somebody to transport the patients from the beauty shop to the resident's room and back and forth." Id. at 961.

The court of appeals framed the question as "whether [Kauffman's] inability to wheel could reasonably be accommodated by assistance from other staff." Id. Relying on two pieces of evidence, the court reversed the district court's judgment in favor of the employer. First, Kauffman testified that she spent only 1.71 hours of a 35-hour work week (approximately five percent) transporting residents. Id. Second, the employer temporarily had used other staff to do the transporting and the employer did not point to evidence that "this diversion of staff from their normal duties was costly to the nursing home or impaired the care provided the residents." Id. In sum, the court held that a job function is not essential "if it [is] so small a part that it c[an] be reassigned to other employees at a negligible cost to the employer." Id. at 962. See also Shell v. Smith, 789 F.3d 715, 718-19 (7th Cir. 2015) ("Although an employer's ability to assign duties to another employee does not make them nonessential, it is difficult to see how the duty could be deemed essential at the summary judgment stage when there is no evidence that its reassignment impacted the City's ability to provide dependable transit services to its citizens in an efficient or effective manner, or otherwise created a hardship or burden.").

I conclude that, in light of Kauffman, I must deny defendant's motion for summary judgment. As in Kauffman, plaintiff says that he spent about five percent of his time driving step vans. In addition, he points to various ways in which defendant has required its employees to work as a team to assist each other to deliver packages outside their normal routes, including an instance in which defendant allowed an injured employee to drive a G-van exclusively on a temporary basis. Like the employer in Kauffman, defendant does not

6

point to any evidence suggesting that the accommodation had adverse effects on its business.

Defendant attempts to distinguish Kauffman on two grounds. First, defendant says that, in Kauffman, the parties disputed how much time the employee spent on the function at issue. That is true, but defendant does not explain why that matters. The question in this case is whether defendant has shown as a matter of law that driving a step van was an essential function of plaintiff's job. In Kauffman, the court was required to accept the plaintiff's estimate that she spent about five percent of her time performing the function at issue; in this case, *both* sides have offered the same time estimate. The fact that the parties agree on this issue does not support a judgment in defendant's favor. If anything, it supports a judgment in *plaintiff's* favor.

Second, defendant says that pushing residents in a wheelchair was "extremely tangential" to Kauffman's job as a hairdresser but plaintiff's "fundamental job duty" was driving. Dft.'s Br., dkt. #29, at 13. Although I agree with defendant that pushing a wheelchair sounds less central to the job of a hairdresser than driving was to plaintiff's job, the court of appeals focused on the amount of time that Kauffman spent on the function, not on whether it was an integral part of cutting and styling hair. Further, the question in this case is not whether driving in general was an essential function of plaintiff's job (it obviously was), but whether driving a particular type of vehicle was an essential function. Because the evidence in this case was that plaintiff drove that type of vehicle only five percent of the time and defendant has not refuted plaintiff's evidence that it would be feasible for defendant to accommodate plaintiff, plaintiff is entitled to a trial under

7

Kauffman.

Defendant alleges generally in its proposed findings of fact that accommodating plaintiff "would limit the operational efficiencies, productivities and growth of the company," Dft.'s PFOF ¶ 60, dkt. #32, but it does not provide any foundation for that allegation. Further, defendant admits that it made no effort to determine whether it would be feasible to excuse plaintiff from driving step vans when it reassigned plaintiff or at any other time. Dft.'s Resp. to Plt.'s PFOF ¶¶ 106-112, dkt. #31.

The only specific evidence defendant cites is plaintiff's testimony that he believed he was more efficient than other employees who drove his route when he was unavailable. Dft.'s PFOF ¶ 37, dkt. #32. Of course, it is not surprising that an employee who drove a particular route many times would be more efficient to some extent than an employee who was less familiar with the route. However, defendant makes no attempt to quantify the difference to show that it would be significant enough to jeopardize customer service. (Defendant makes a belated attempt to do that in its reply materials, e.g., Dft.'s Reply to Plt.'s Resp. to Dft.'s PFOF ¶ 35, but I decline to consider that argument. Narducci v. Moore, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.").) More important, plaintiff is not asking for someone to take over his entire route, but for defendant to provide limited assistance on those few occasions when the number or size of his packages require the use of a step van. This could be done in various ways, such as by having drivers on adjoining routes take some of the deliveries or by the branch manager or group leader providing

8

assistance, as they regularly do to help with extra volume. Again, defendant cites no specific evidence demonstrating that such an accommodation would impose more than a "negligible cost."

Defendant cites cases from other circuits in which the court concluded that an employee's failure to obtain certification under federal law to drive a particular type of vehicle was fatal to an ADA claim, even when the employee at issue spent little time driving. Hawkins v. Schwan's Home Services, Inc., 778 F.3d 877 (10th Cir. 2015); Knutson v. Schwan's Home Services, Inc., 711 F.3d 911 (8th Cir. 2013). Although these cases provide some support for defendant's position, each case is decided on its own facts. For example, in Hawkins, 778 F.3d at 892, the court emphasized that the employee adduced no evidence that other staff would be able to provide the necessary assistance, but plaintiff has cited such evidence in this case. More important, Hawkins and Knutson are not controlling precedent; Kauffman is.

Alternatively, defendant cites several cases from this circuit in which the court concluded that the ADA did not require the employer to eliminate particular job functions for a disabled employee. Basith v. Cook County, 241 F.3d 919, 929 (7th Cir. 2001) (county not required to eliminate pharmacy technician's duty of making deliveries); Malabarba v. Chicago Tribune Co., 149 F.3d 690, 700 (7th Cir. 1998) (newspaper not required to eliminate packager's duties of bending, lifting heavy objects and standing for long periods of time); Miller v. Illinois Dept. of Corrections, 107 F.3d 483, 485 (7th Cir. 1997) (prison not required to eliminate guard's duties of standing guard, counting inmates, inspecting for

9

contraband, escorting inmates outside their cells, searching inmates and visitors, searching for escaped prisoners and being on 24-hour call to respond to emergencies). However, these cases are distinguishable because each of them involved (1) duties that made up a much more significant portion of the employee's job; and (2) a lack of evidence that it would be feasible for other employees to provide assistance.

In Miller, 107 F.3d at 485, the court stated: "if an employer has a legitimate reason for specifying multiple duties for a particular job classification, duties the occupant of the position is expected to rotate through, a disabled employee will not be qualified for the position unless he can perform enough of these duties to enable a judgment that he can perform its essential duties." In this case, it is undisputed that plaintiff can perform all the duties of a route driver except drive a step van. Because plaintiff has presented evidence that defendant can reasonably accommodate plaintiff's inability to drive a step van, the cases defendant cites are not instructive.

Finally, defendant says that "the Seventh Circuit has repeatedly held than an employer is entitled to determine the essential functions for a position and that its determination is presumed to be correct." Dft.'s Reply Br., dkt. #29, at 6. That statement is misleading. Although it is true that the employer's own judgment (including its job description) is an important factor to consider in determining whether a job function is essential, the employer's judgment is not dispositive. Shell, 789 F.3d at 718 ("The employer's determination about what functions are essential is certainly given weight, but it is one of seven factors the court should consider."); Miller v. Illinois Dept. of

Transportation, 643 F.3d 190, 198 (7th Cir. 2011) ("[T]he employer's judgment is an important factor, but it is not controlling."). If the rule were otherwise, an employer could insulate itself from ADA claims simply by deeming as "essential" anything that the disabled employee could not do.

The other factors courts may consider include the amount of time spent on the job performing the function, the consequences of not requiring the employee to perform the function, the terms of a collective bargaining agreement, the work experience of past employees in the job and the current work experience of employees in similar jobs. Stern v. St. Anthony's Health Center, 788 F.3d 276, 285-86 (7th Cir. 2015). I have considered most of these factors in the opinion. The parties do not argue that a collective bargaining agreement is relevant to this case, so I need not consider that factor. Further, in Kauffman, under similar circumstances, the court determined as dispositive the amount of time spent performing the function, the consequences of not requiring the employee to perform the function and the employer's past experiences. In accordance with Kauffman, I am denying defendant's motion for summary judgment on the question whether driving a step van is an essential function of plaintiff's job.

## B. Other Issues

Defendant makes several other arguments, but none of them require extended discussion. First, defendant relies on 42 U.S.C. § 12113(a):

> It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that

> screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.

Defendant says that its job description for route drivers includes a certification under federal law to drive a commercial motor vehicle, so the requirement is "job-related and consistent with business necessity." It cites Bay v. Cassens Transportation Co., 212 F.3d 969 (7th Cir. 2000), for the proposition that an employer is allowed under the ADA to remove an employee from his position if his disability prevents him from meeting the requirements of federal regulations. However, the difference between this case and Bay is that, in Bay, the parties did not dispute that compliance with the relevant federal regulation was an essential function of the job. In Shell, 789 F.3d at 717, the court made it clear that an employer cannot succeed on a defense under § 12113(a) unless the qualification standard relates to an essential function of the job. Id. at 717 ("According to the City, possessing a [commercial driver's license] is a lawful qualification standard—'job related and consistent with business necessity'—that Shell cannot meet. . . . However, . . . [t]he City could only require Shell to have a [commercial driver's license] if one was necessary to perform an essential function of the Mechanic's Helper position."). Because defendant has not shown as a matter of law that driving commercial motor vehicles was an essential function of plaintiff's job, defendant cannot prevail on its defense under § 12113(a), at least not on a motion for summary judgment.

Second, defendant says that accommodating plaintiff would have imposed an undue hardship. 42 U.S.C. § 12112(5)(A)(b) (employer need not provide accommodation if

employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity").  However, defendant simply repeats its arguments that it should not be required to reassign essential functions of plaintiff's job. Because I have considered and rejected these agreements, it is unnecessary to discuss them again.  Morton v. United Parcel Service, Inc., 272 F.3d 1249, 1254 (9th Cir. 2001) ("[The] essential function and undue hardship analyses often overlap.").

Finally, defendant says that it met its duty to accommodate plaintiff by reassigning him to another position because plaintiff never requested a different accommodation.  It cites three district court decisions for the proposition that "[a]n employer has no ADA obligation to explore every feasible accommodation on its own accord or to grant an accommodation requested for the first time in legal proceedings." Dft.'s Br., dkt. #13, at 16 (citing Salmon v. West Clark Community School, 64 F. Supp. 2d 850, 864-65 (S.D. Ind. 1999); Sieberns v. Wal-Mart Stores, Inc., 946 F. Supp. 664, 670 (N.D. Ind. 1996); Valentine v. American Home Shield Corp., 939 F. Supp. 1376, 1400-01 (N.D. Iowa 1996)). However, these cases are not instructive because plaintiff was not expecting defendant "to explore every feasible accommodation on its own accord."  Rather, the question is whether defendant had an obligation to consider whether there was *some* way that plaintiff could retain the job he had been performing for several years before reassigning him to an obviously less desirable position.

The cases defendant cites do not hold that an employer cannot be held liable for failing to provide a particular accommodation unless the employee requested it expressly.

Rather, "[a]n employee begins the accommodation process by notifying her employer of her disability." Spurling v. C & M Fine Pack, Inc., 739 F.3d 1055, 1061 (7th Cir. 2014). "[A]t that point, . . . the ADA requires an employer to engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances." Id. (internal quotations omitted). Of course, defendant knew about plaintiff's disability. Defendant also should have known even without an express request from plaintiff that he would prefer to keep the same pay and benefits rather than be transferred to a significantly less lucrative position.

In cases in which the employee is seeking an obscure or unusual accommodation, it makes sense to impose some burden on the employee to identify the particular accommodation. However, in this case, the accommodation was obvious: allow plaintiff to drive trucks that he is permitted to drive under federal law. Again, it is undisputed that defendant did not even consider whether it would be feasible to provide that accommodation. It is understandable that plaintiff did not request an accommodation to keep his job when defendant never suggested that was a possibility. Instead, defendant's first thought was to reassign plaintiff. Although employees are not entitled to choose whatever accommodation they wish, Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir.1996), employers should at least consider whether a reasonable accommodation could allow the plaintiff to retain his job before giving him a demotion. Under these circumstances, I cannot conclude as a matter of law that plaintiff forfeited his claim by causing a breakdown in the interactive process. Beck v. University of Wisconsin Board of Regents, 75 F.3d 1130, 1135

(7th Cir. 1996) ("[N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability.").

Contrary to defendant's assertion, its reassignment was not "extremely similar" to the one upheld in Emerson v. North States Power Co., 256 F.3d 506, 515-16 (7th Cir. 2001). In Emerson, the court concluded that there was no reasonable accommodation that could have allowed the employee to keep the same job, so reassignment was the only possible accommodation. Because a reasonable jury could find that a reasonable accommodation would have allowed plaintiff to keep the same job, Emerson is not on point.

ORDER

IT IS ORDERED that defendant Spee-Dee Delivery Service, Inc.'s motion for summary judgment, dkt. #12, is DENIED.

Entered this 30th day of September, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge